UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| FIDEL GARCIA, | ) | CASE NO.  4:10 CV 2480 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| BOP, et al., | ) | |
| | ) | |
| Respondents. | ) | |

Before the court is pro se petitioner Fidel Garcia's above-captioned petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241.  Mr. Garcia is incarcerated at the Northeast Ohio Correctional Center in Youngstown, Ohio.   He brings this action against the Bureau of Prisons (BOP) and N.E.O.C.C. Warden Roddy Rushing seeking leave to apply for early release under the Second Chance Act.

*Background*

Mr. Garcia pleaded guilty to conspiracy to distribute a controlled substance in the United States District Court for the Northern District of Illinois. United States v. Garcia, No. 4:03cr0421 (N.D. Ill. 2003).  The court sentenced him to serve 138 months in prison on August 3,

2006.

A Program Review Report, dated September 8, 2010, identifies Petitioner's residence as Michaocan, Mexico. It also reveals he is scheduled for release from prison on January 4, 2014, but a detainer was lodged against petitioner by the Bureau of Immigration and Customs Enforcement (BICE) on April 2, 2008. The report concludes that Mr. Garcia is ineligible for a C.C.C. recommendation or Release Preparation Participation pending his deportation to Mexico.

Mr. Garcia filed an Inmate Request to Staff on September 10, 2010. He requested placement and consideration for Home Detention as a non-violent, first-time offender under the Second Chance Act. The request was rejected based on Petitioner's pending deportation, as evidenced by the BICE detainer. A subsequent Informal Resolution Form filed by Mr. Garcia was also denied. The Staff Response explained that because Mr. Garcia is a non-citizen with a BICE detainer, proceedings to determine whether he will be deported will commence upon his release from prison. Because the Second Chance Act does not contemplate the release of a prisoner to an agency for further detention, staff explained that Mr. Garcia could not be considered for recommendation to the program.

A response from a Corrections Corporation of America (CCA) Grievance Officer, dated September 27, 2010, reveals Mr. Garcia continued to pursue his administrative request for consideration under the Second Chance Act. Although the Response was later corrected on October 8, 2010, the result was the same. The Grievance Officer explained that the BOP applied a Public Safety Factor (PSF) of Alien to Mr. Garcia because he is not a citizen of the United States. The Second Chance Act has requirements that a prisoner must meet to be considered eligible for the program. An Alien PSF is considered a flight risk by the BOP, and thus Mr. Garcia could not be

recommended to the program. The Grievance Officer attached a copy of the Second Chance Act for petitioner's reference.

*Analysis*

Mr. Garcia maintains the BOP must consider him for home detention placement under the Second Chance Act. He notes that the Act does not make any distinction between citizens and non-citizens. He asserts he qualifies for consideration as a non-violent, legal resident, first-time offender.

He seeks a waiver of the requirement to exhaust his administrative remedies. Petitioner maintains "C.C.C. does not offer any available recourse or remedies for adequate relief." (Pet. at 4.) In the alternative, he argues the "length[y] administrative process would extend easily beyond my schedule[d] release and thereby mooting my legal claim." (Pet. at 4.) On this basis, he argues exhaustion would be futile.

Mr. Garcia maintains the respondents' decision to deny him the opportunity to apply for early release under 18 U.S.C. §§ 3621(b) & 3624(c) is arbitrary. As a matter of law, he asserts their decision denies his right to procedural due process. Petitioner argues he has a right to be heard before the BOP deny his right to review for early release under the Act. Citing the unreported White v. Jett, 2010 WL 1753193 (D. Minn. Apr. 2, 2010) case from Minnesota, petitioner believes habeas relief is available for his claim.

*Initial Review*

This matter is before the court for initial screening. 28 U.S.C. § 2243; Harper v. Thoms, No. 02-5520 2002, WL 31388736, at *1 (6th Cir. Oct. 22, 2002). At this stage, allegations in the petition are taken as true and liberally construed in petitioner's favor. Urbina v. Thoms, 270

F.3d 292, 295 (6th Cir.2001).  As Mr. Garcia is appearing pro se, his petition is held to less stringent standards than those drafted by attorneys. Burton v. Jones, 321 F.3d 569, 573 (6th Cir.2003); Hahn v. Star Bank, 190 F.3d 708, 715 (6th Cir.1999).  For the reasons set forth below, however, the petition lacks merit and is denied.

*Exhaustion*

"[F]ederal prisoners complaining of events or conditions relating to their custody must exhaust their administrative remedies before habeas relief may be granted." Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir.1981).  The BOP maintains an Administrative Remedy Program through which inmates may seek formal review of issues relating to any aspect of their confinement. See 28 C.F.R. § 542.10(a).  The Program applies only to inmates in "institutions operated by the Bureau" and to inmates "designated to contract Community Corrections Centers." N.E.O.C.C. is a private prison facility for which staff of the Correctional Programs Division in the BOP's Central Office provide oversight.  While N.E.O.C.C. may qualify as a non-federal facility to which the Administrative Program does not apply, see 28 C.F.R. § 542.10(b),[1] the Court cannot ignore the fact that administrative remedies were available to Mr. Garcia.

Petitioner's own actions in filing an inmate request and grievance demonstrate that administrative remedies were available to him.  Furthermore, he twice supplemented his Petition before this Court with a copies of the Regional Administrative Remedy Appeal he filed on October 19, 2010, the Regional Director's denial and his appeal to the General Counsel on December 8, 2010. Procedurally, once the regional director denied his claim, Petitioner was entitled to appeal

---

[1] That section of the regulation states that the Administrative Remedy Program "does not apply to inmates confined in other non-federal facilities."

to General Counsel for the Bureau of Prisons. See 28 C.F.R. §§ 542.13-15. "An inmate has not fully exhausted his administrative remedies until he has appealed through all three levels." Irwin v. Hawk, 40 F.3d 347, 349 n. 2 (11th Cir.1994).

To date, Petitioner's final appeal to the General Counsel is still pending. Although the BOP had not completed its review of Petitioner's claims before Petitioner filed his habeas petition, he has not fully exhausted his administrative remedies. See e.g., Irwin v. Hawk, 40 F.3d 347, 349 n. 2 (11th Cir.1994)("An inmate has not fully exhausted his administrative remedies until he has appealed through all three levels.")

*28 U.S.C. §2241*

Mr. Garcia's claim that his ineligibility to seek early release under the Act deprives him of liberty without due process, in violation of the Fifth Amendment, must fail. See, e.g., Montanye v. Haymes, 427 U.S. 236, 242 (1976) ("As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."); Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976) ("We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right.... The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process.");Sandin v. Conner, 515 U.S. 742, 484 (1996) ("[Liberty interests conferred by government action] will be generally limited to freedom from restraint which, while not exceeding the sentence

5

in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."); See also Tunnicliffe v. Bureau of Prisons, No. 06-CV-49-HRW, 2006 WL 1360802 (E.D.Ky. May 15, 2006) (denying habeas and injunctive relief, holding that there is no protected liberty interest in C.C.C. placement).

By statute, the BOP has some measure of discretion with regard to prison management:

> (a) A person who has been sentenced to a term of imprisonment ... shall be committed to the custody of the Bureau of Prisons. [...]
>
> (b) The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability.

18 U.S.C. § 3621(a) & (b). Congress granted the Bureau broad discretion to appoint the places where prisoners will serve their terms of imprisonment. Subsection 3621(a) directs that people who must serve terms of imprisonment be given over to the custody of the Bureau. The first sentence of subsection 3621(b) uses mandatory language that requires the Bureau to do something with the prisoners in their custody, namely place them. The second sentence of this subsection authorizes the Bureau to place prisoners in "any available penal or correctional facility." Thus, the statute commits federal prisoners to the custody of the BOP, directs the Bureau do something to place people so committed, and grants the BOP authority to select the prisoner's place of imprisonment.

There is no suggestion of any limitation on the Bureau's authority except that the facility chosen must (1) be a "penal or correctional facility"; and, (2) meet "minimum standards of health and habitability established by the Bureau." Hence, the only apparent limitation on the

6

Bureau is that it choose a place that is a "penal or correctional facility."

Petitioner suggests that within that discretion, he is entitled to consideration under the Second Chance Act, which states, in part:

> The Director of the Bureau of Prisons shall, *to the extent practicable*, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1)(emphasis added). Here, the BOP has determined that it is not practicable to include deportable aliens in the class of prisoners eligible for placement in a Community Control Center (C.C.C.) or Home Confinement. See 18 U.S.C. § 3624(c)(2)

To support this conclusion, the Supreme Court's decision in Lopez v. Davis, 531 U.S. 230 (2001) is instructive. Lopez was considered with the BOP's discretion under 18 U.S.C. § 3621(e)(2)(B). Lopez, 531 U.S. at 238. Section 3621(e)(2)(B) provides: "The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons." The Lopez Court concluded that the BOP had the discretion to exclude inmates whose sentence was enhanced by possessing a firearm when they committed an otherwise nonviolent crime from having their sentences reduced by participating in the drug abuse program. Lopez, 531 U.S. at 240. The Supreme Court relied upon the use of the phrase "may be reduced" to conclude that the BOP has the discretion to decide whether a category of inmates eligible for consideration under § 3621(e)(2)(B) will be permitted to have their sentence reduced. Lopez, 531 U.S. at 241.

While the Second Chance Act mandates the BOP allow prisoners to spend their final

7

months under conditions that will permit them to adjust to reentry into the community, it only provides the BOP "may include a community confinement facility," just as § 3621(b) provides that the BOP "may designate any available penal or correctional facility." Moreover, the mandate to consider placement under the Act is qualified by the phrase "to the extent practicable." This clearly does not limit the BOP's discretion to determine an inmate's placement in a C.C.C. or home confinement.

Contrary to Mr. Garcia's allegations, the decision to exclude him from consideration for eligibility under the Second Chance Act is not arbitrary. Because of his PSF of Deportable Alien, he is subject to increased security measures, including ineligibility for early release consideration under 18 U.S.C. § 3621(e)(2)(B). Petitioner's classification, and resultant ineligibility for certain BOP programming, does not impose an atypical and significant hardship on him. A prisoner's classification and eligibility for rehabilitative programs in the federal system are matters delegated by Congress to the discretion of federal prison officials and thus implicate "no legitimate statutory or constitutional entitlement sufficient to invoke due process." Moody, 429 U.S. at 88 n. 9. Claims based on classification procedures do not state constitutional claims. See id. Thus, as concluded by other courts addressing this matter and, in general, Lopez, the BOP may exclude deportable aliens from consideration under the Second Chance Act.

*Conclusion*

Based on the foregoing, this petition is dismissed pursuant to 28 U.S.C. § 2243. Further, Petitioner's Motion to Proceed In Forma Pauperis is granted. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.


Dated: March 24, 2011            *s/      James S. Gwin*
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE